STEVEN W. MOORE (SBN 193068)
SWMoore@FoxRothschild.com
MICHAEL J. RUDD (SBN 352468)
MRudd@FoxRothschild.com
RODOLFO MEDA (SBN 346983)
RMeda@FoxRothschild.com
FOX ROTHSCHILD LLP
345 California Street, Suite 2200
San Francisco, CA 94104-2670
Telephone:    415.364.5540
Facsimile:    415.391.4436

Attorneys for Plaintiff
Spectra360 Inc. d/b/a Raso Solutions, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPECTRA360 INC. D/B/A RASO SOLUTIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN L. BROWN,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>(1) **TRADE LIBEL;**<br>(2) **DEFAMATION;**<br>(3) **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS;**<br>(4) **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**<br>(5) **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**<br>(6) **VIOLATION OF CAL. BUS. & PROF. CODE § 17200,** *et seq.***;**<br>(7) **CIVIL THEFT IN VIOLATION OF CAL. PEN. CODE § 496(c).** |

Plaintiff Spectra360 Inc. ("Spectra360") d/b/a Raso Solutions, LLC ("Raso") (collectively "Plaintiff") hereby submits this Complaint against Defendant Brian L. Brown ("Brown") for compensatory damages, punitive damages, and injunctive relief for damage caused by Brown's use of false, disparaging statements to damage Plaintiff's relationship with its client, Cask NX LLC ("Cask"), and states as follows:

**JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Specifically, the amount in controversy exceeds $75,000, exclusive of interests and costs and complete diversity of citizenship exists between Plaintiff and Brown. The amount in controversy exceeds $75,000 based on the following damage categories:

   a. Compensatory damages exceed $75,000 in and of themselves because, at a bare minimum, Plaintiff has lost profits as a result of Brown's interference with the contracts relating to Plaintiff's consultant Sean Bracebridge in an amount that exceeds $4,200 a month and those damages have been accruing for several months, and will continue to accrue for another calendar year following Bracebridge providing Plaintiff with formal written notice of his intent to terminate his contract with Plaintiff, assuming that ever occurs. For the sake of argument, if eighteen months of damages accrue with respect to Bracebridge, the amount of compensatory damages would exceed $75,000 for Bracebridge alone. However, compensatory damages also include the long-term damage caused by Brown's interference with Plaintiff's contracts with Cask, which exponentially increases the damages Plaintiff is entitled to, and means the amount in controversy far exceeds $75,000 when all the compensatory damages are aggregated. Additionally, Plaintiff is entitled to treble damages pursuant to Cal. Pen. Code § 496(c), which exceeds $225,000.

   b. Punitive damages in this case will, at a minimum, exceed $300,000 based on a 4:1 ratio to the bare minimum compensatory damage amount, which exceeds $75,000. Additionally, punitive damages are based on Brown's interference with contracts that he put into place himself, which evidences his malicious intent to interfere with those contracts giving rise to a significant amount of punitive damages being assessed against Brown by a jury.

      c. The pecuniary value of nonmonetary relief sought, based on Plaintiff's request for injunctive relief, exceeds $156,087.60, which includes the potential lost profit from Plaintiff's relationship with Cask as it relates to the three consultants Brown induced to breach their contractual obligations to Plaintiff. However, the pecuniary value of preventing Brown from continuing to interfere with Plaintiff's prospective economic relationship with Cask and other clients, far exceeds $156,087.60.

      d. Plaintiff is entitled to its attorneys' fees pursuant to Cal. Pen. Code § 496(c), which are likely to significantly exceed $75,000.

2. This Court has personal jurisdiction over Brown because he maintained sufficient minimal contacts within the state of California, which is evidenced by his wrongful conduct in inducing Cask LLC, which is based in San Diego, CA to alter its contractual relationship with Plaintiff. Additionally, the contractual relationships were maintained by Brown while he worked out of Spectra360's Castro Valley, CA office.

3. Venue is proper in this Court pursuant to 28 U.S.C. 1391 because the financial harm giving rise to Plaintiff's claims occurred in this judicial district given that the contracts Brown interfered with were maintained out of Spectra360's Castro Valley, CA office.

4. Divisional assignment is appropriate in San Francisco pursuant to Local Rules 3-2 because the financial harm giving rise to Plaintiff's claims occurred in Alameda County, California.

**PARTIES**

5. Spectra360 Inc. is a Delaware Corporation, with its corporate office located in Quincy, Massachusetts.

6. Brown is an individual domiciled at 10281 Bayhead Beach Ave., Las Vegas, Nevada.

**FACTUAL ALLEGATIONS**

7. On May 1, 2019, Spectra360 and Brown entered into an Employment Agreement, wherein Brown would be an "at will" employee and have the position and duties of Spectra360's Chief Operating Officer, and participate in Spectra360's 2019 Incentive Stock Option Plan subject to certain performance targets.

8. On May 8, 2019, Brown sold Raso to Spectra360, including without limitation Raso's

subsidiary in the Republic of the Philippines, at an agreed valuation of $1.5 Million.

9. On January 22, 2021, Raso contracted with Cask, via a Master Services Agreement, to provide Cask with personnel for Cask's operations in the Philippines.

10. The Master Services Agreement was executed by Brown as the president of Raso and indicates Raso's principal place of business was 4445 Eastgate Mall #200, San Diego, CA.

11. On April 21, 2023, Spectra360 terminated Brown's Employment Agreement, which had been later amended.

12. Upon information and belief, Brown or his agents have used improper means to take the most profitable portions of Spectra360's business relationship with Cask for himself.

13. Specifically, an employee of Cask, informed Ryan Archibald, a Division President for Raso, that Brown had coached three consultants (Marco Manimtim, Dante Dita, and Sean Bracebridge) who Raso had previously assigned to Cask to tell Cask they were unhappy with Raso and to turn in their resignation with Raso so Cask would move its business, as it relates to these three consultants, to Brown's company in order to keep the consultants.

14. The Cask employee also said Brown's contact with Cask, which had orchestrated this change, was in Cask's legal department, but did not know their name.

15. Upon information and belief, Brown, or alternatively an agent of Brown, told his contact within Cask's contract/legal department that these three consultants would not continue with Cask unless they were moved to Brown's payroll.

16. Upon information and belief, Brown also told these three consultants they would lose their job if they did not terminate their employment contract with Raso and enter into a new employment contract with Brown's company to work for Cask.

17. In fact, these three consultants were not unhappy with Raso, which the Cask employee confirmed by stating that he had never heard of any issues with these three consultants.

18. Brown had access and knowledge to confidential and proprietary information as it relates to the profitability of these three consultants by way of his executive position with Spectra360, which, upon information and belief, is what led Brown to target these three consultants.

19. These three consultants have historically generated a combined annual gross profit for

Spectra360 of $156,087.60

20. Additionally, Brown has induced these three consultants to breach their employment agreements with Spectra360, which state in pertinent part that for a period of one year following their resignation they will not be employed either directly or indirectly by any client or former client of Spectra360, which Cask is.

21. Brown has also induced Cask to intentionally interfere with the employment agreements of these three consultants, which state in pertinent part that for a period of one year following their resignation they will not be employed either directly or indirectly by any client or former client of Spectra360, which Cask is.

22. Cask has not sought written consent from Spectra360 to indirectly employ these three consultants, and Spectra360 has not provided such consent.

23. Nevertheless, for the sake of argument, Spectra360 would reasonably withhold consent based upon the improper means employed by Brown (i.e., spreading the false statement to Cask that the three contractors were unhappy, and spreading the false statement to the three contractors that they would lose their jobs if they did not terminate their employment contract with Raso to work for Cask and enter a new employment contract with Brown's company to work for Cask) to take the profits related to these three consultants for himself.

24. Subsequent to Plaintiff's discovery of Brown's interference with the contracts of these three consultants and Plaintiff's relationship with Cask, Dante Ditan and Marco Manimtim have reversed course and declined to allow Brown to improperly influence them. Sean Bracebridge, however, continues to conspire with Brown to breach his contract with Plaintiff. The gross profit from Bracebridge exceeds $4,200 per month. Bracebridge, at all times related to the allegations contained in this Complaint, was and remains an employee of Plaintiff, and has not provided Plaintiff with notice of his intent to terminate his employment contract with Plaintiff, but instead, appears to have conspired with Brown to leverage a raise from Plaintiff.

## FIRST CAUSE OF ACTION

### (Trade Libel)

25. Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

26. Upon information and belief, Brown told his contact within Cask's legal department that these three consultants would not continue with Cask unless they were moved to Brown's payroll.

27. Upon information and belief, Brown also told these three consultants that they would lose their job if they did not terminate their employment contract with Raso to work for Cask and enter a new employment contract with Brown's company to work for Cask.

28. Upon information and belief, Brown told Cask, in writing and orally, that the three consultants were unhappy with Raso and that they would leave Cask if Cask did not abandon its relationship with Raso in favor of Brown's company.

29. Cask was induced to end its relationship with Raso as to these three consultants because of Brown's false statements.

30. Plaintiff has endured special damages as a result of the lost profit from these three consultants, as well as any others who Brown has similarly induced to leave Raso by improper means.

31. Plaintiff seeks injunctive relief enjoining Brown from continuing to induce Plaintiff's clients to end their business relationships with Plaintiff and for disgorgement of Brown's ill-gotten profits from his unfair and unlawful business practices.

32. Plaintiff seeks injunctive relief enjoining Brown from continuing to induce Plaintiff's employees to breach their employment agreements with Plaintiff and for disgorgement of Brown's ill-gotten profits from his unfair and unlawful business practices.

## SECOND CAUSE OF ACTION

### (Defamation)

33. Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

34. Upon information and belief, Brown told his contact within Cask's legal department that these three consultants would not continue with Cask unless they were moved to Brown's payroll.

35.  Upon information and belief, Brown also told these three consultants that they would lose their job if they did not terminate their employment contract with Raso to work for Cask and enter a new employment contract with Brown's company to work for Cask.

36.  Upon information and belief, Brown told Cask, in writing and orally, that the three consultants were unhappy with Raso and that they would leave Cask if Cask did not abandon its relationship with Raso in favor of Brown's company.

37.  Brown falsely represented that these three consultants were unhappy with Raso and would leave Cask if Cask did not abandon its relationship with Raso in favor of Brown's company.

38.  Brown's false statement was designed to damage Raso's reputation and relationship with Cask.

39.  Brown's false statement was not privileged.

40.  Plaintiff has endured special damages as a result of the lost profit from these three consultants, as well as any others who Brown has similarly induced to leave Raso by improper means.

41.  Plaintiff seeks injunctive relief enjoining Brown from continuing to induce Plaintiff's clients to end their business relationships with Plaintiff and for disgorgement of Brown's ill-gotten profits from his unfair and unlawful business practices.

42.  Plaintiff seeks injunctive relief enjoining Brown from continuing to induce Plaintiff's employees to breach their employment agreements with Plaintiff and for disgorgement of Brown's ill-gotten profits from his unfair and unlawful business practices.

## THIRD CAUSE OF ACTION

**(Intentional Interference with Contractual Relations)**

43.  Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

44.  Upon information and belief, Brown told his contact within Cask's legal department that these three consultants would not continue with Cask unless they were moved to Brown's payroll.

45.  Upon information and belief, Brown also told these three consultants that they would lose their job if they did not terminate their employment contract with Raso to work for Cask and enter into a new employment contract with Brown's company to work for Cask.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
162518536.2

46. A valid contract exists between Plaintiff and Cask.

47. Valid contracts exist between Plaintiff and the three consultants.

48. Brown had knowledge of the contract between Plaintiff and Cask because he signed it.

49. Brown also had knowledge of the contracts between Plaintiff and the three consultants.

50. Brown intentionally induced Cask to end its business relationship with respect to these three consultants by falsely claiming these three consultants were unhappy with Raso.

51. Brown intentionally induced the three consultants to violate the terms of their employment agreements with Plaintiff by working for Cask through his company.

52. Cask disrupted its relationship with Plaintiff by changing its service provider with respect to these three consultants from Raso to Brown.

53. The three consultants breached their employment agreements with Plaintiff by working for Cask through Brown's company.

54. Plaintiff was economically harmed by the lost profits from these three consultants, as well as any others who Brown has similarly induced to leave Raso by improper means.

55. Plaintiff seeks injunctive relief enjoining Brown from continuing to induce Plaintiff's clients to end their business relationships with Plaintiff and for disgorgement of Brown's ill-gotten profits from his unfair and unlawful business practices.

56. Plaintiff seeks injunctive relief enjoining Brown from continuing to induce Plaintiff's employees to breach their employment agreements with Plaintiff and for disgorgement of Brown's ill-gotten profits from his unfair and unlawful business practices.

57. Plaintiff seeks injunctive relief enjoining Brown from continuing to induce Plaintiff's employees to breach their employment agreements with Plaintiff and for disgorgement of Brown's ill-gotten profits from his unfair and unlawful business practices.

## FOURTH CAUSE OF ACTION

**(Intentional Interference with Prospective Economic Advantage)**

58. Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

59. Upon information and belief, Brown told his contact within Cask's legal department that

these three consultants would not continue with Cask unless they were moved to Brown's payroll.

60. Upon information and belief, Brown also told these three consultants that they would lose their job if they did not terminate their employment contract with Raso to work for Cask and enter into a new employment contract with Brown's company to work for Cask.

61. Plaintiff had an ongoing economic relationship with Cask, which would likely have continued had it not been for Brown's false statements.

62. Brown knew about Plaintiff's relationship with Cask because he signed the Master Services Agreement between Raso and Cask.

63. Brown intentionally acted to disrupt the relationship between Plaintiff and Cask by falsely stating the three consultants were unhappy with Raso and that they would leave Cask if Cask did not abandon its relationship with Raso in favor of Brown's company.

64. Cask disrupted its relationship with Plaintiff by changing its service provider with respect to these three consultants from Raso to Brown.

65. Plaintiff was economically harmed by the lost profits from these three consultants, as well as any others who Brown has similarly induced to leave Raso by improper means.

66. Plaintiff seeks injunctive relief enjoining Brown from continuing to induce Plaintiff's clients to end their business relationships with Plaintiff and for disgorgement of Brown's ill-gotten profits from his unfair and unlawful business practices.

67. Plaintiff seeks injunctive relief enjoining Brown from continuing to induce Plaintiff's employees to breach their employment agreements with Plaintiff and for disgorgement of Brown's ill-gotten profits from his unfair and unlawful business practices.

## FIFTH CAUSE OF ACTION

**(Negligent Interference with Prospective Economic Advantage)**

68. Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

69. Upon information and belief, Brown told his contact within Cask's legal department that these three consultants would not continue with Cask unless they were moved to Brown's payroll.

70. Upon information and belief, Brown also told these three consultants that they would lose

8

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
162518536.2

their job if they did not terminate their employment contract with Raso to work for Cask and enter into a new employment contract with Brown's company to work for Cask.

71. In the event that it is determined Brown did not act intentionally by inducing Cask to disrupt its relationship with Plaintiff by falsely stating the three consultants were unhappy with Raso and that they would leave Cask if Cask did not abandon its relationship with Raso in favor of Brown's company, Plaintiff alleges that these acts were committed as a result of gross negligence on the part of Brown.

72. As a result of Brown's interference with Plaintiff's prospective business gains by, among other things, inducing Cask to disrupt its relationship with Plaintiff by falsely stating the three consultants were unhappy with Raso and that they would leave Cask if Cask did not abandon its relationship with Raso in favor of Brown's company, Plaintiff was deprived of the use and benefit of monies that could have been earned from Plaintiff's continued relationship with Cask.

73. As a proximate result of the above acts and omission by Brown, Plaintiff has lost and/or will lose business from Cask in the future and Plaintiff is entitled to compensatory damages in an amount to be proven at trial.

74. Brown's interference with Plaintiff's prospective economic relationship with Cask was willful, malicious, oppressive, and done with a conscious disregard for the rights of Plaintiff entitling Plaintiff to recover punitive damages in an amount sufficient to deter future conduct.

75. Plaintiff also seeks injunctive relief enjoining Brown from continuing to induce Plaintiff's clients to end their business relationships with Plaintiff and for disgorgement of Brown's ill-gotten profits from his unfair and unlawful business practices.

76. Plaintiff seeks injunctive relief enjoining Brown from continuing to induce Plaintiff's employees to breach their employment agreements with Plaintiff and for disgorgement of Brown's ill-gotten profits from his unfair and unlawful business practices.

**SIXTH CAUSE OF ACTION**

**(Violation of California Business and Professions Code § 17200, *et seq.*)**

77. Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

78. Upon information and belief, Brown told his contact within Cask's legal department that

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
162518536.2

these three consultants would not continue with Cask unless they were moved to Brown's payroll.

79. Upon information and belief, Brown also told these three consultants that they would lose their job if they did not terminate their employment contract with Raso to work for Cask and enter into a new employment contract with Brown's company to work for Cask.

80. Brown has engaged and continues to engage in unfair and unlawful business practices in California by misappropriating Plaintiff's proprietary and confidential business information for the purposes of identifying Plaintiff's most profitable consultants to then interfere with Plaintiff's prospective economic advantage intentionally or negligently with its clients, including but not limited to Cask.

81. Brown's utilization of such unfair and unlawful business practices constitutes unfair, unlawful competition and provides an unfair advantage of Brown's competitors, including Plaintiff.

82. Plaintiff seeks injunctive relief enjoining Brown from continuing to induce Plaintiff's clients to end their business relationships with Plaintiff and for disgorgement of Brown's ill-gotten profits from his unfair and unlawful business practices.

83. Plaintiff seeks injunctive relief enjoining Brown from continuing to induce Plaintiff's employees to breach their employment agreements with Plaintiff and for disgorgement of Brown's ill-gotten profits from his unfair and unlawful business practices.

## SEVENTH CAUSE OF ACTION

**(Violation of California Penal Code § 496(c))**

84. Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

85. Upon information and belief, Brown told his contact within Cask's legal department that these three consultants would not continue with Cask unless they were moved to Brown's payroll.

86. Upon information and belief, Brown also told these three consultants that they would lose their job if they did not terminate their employment contract with Raso to work for Cask and enter into a new employment contract with Brown's company to work for Cask.

87. Upon information and belief, Brown stole the profits from the contracts Plaintiff had with Cask as to the consultants through careful planning and deliberation.

88. Brown or his agents made fraudulent and false representations to the consultants and Cask,

10
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
162518536.2

which reflects a criminal intent on Brown's part to withhold those profits for himself knowing that he was interfering with Plaintiff's contracts with the consultants and Cask and Plaintiff's prospective economic advantages.

89. Brown willfully and knowingly made fraudulent and false representations to the consultants involved with the intent to steal the profits and withhold the stolen property from Plaintiff.

90. As result, Brown has improperly stolen the most profitable portions of Spectra360's business relationship with Cask for himself, depriving Plaintiff of its contractual property rights in those profits.

91. Pursuant to Cal. Pen. Code 496(c), Plaintiff seeks treble damages resulting from Brown's theft, costs of suit, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Brown as follows:

1. An injunction enjoining Brown from the unlawful conduct alleged herein;
2. Compensatory damages;
3. Treble Damages;
4. Punitive Damages;
5. Attorneys' fees and costs;
6. For such other and further relief as the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: September 13, 2024

Respectfully submitted,

FOX ROTHSCHILD LLP

*/s/ Steven W. Moore*
STEVEN W. MOORE
MICHAEL J. RUDD
RODOLFO MEDA
*Attorneys for Plaintiff*
SPECTRA360 INC. d/b/a RASO SOLUTIONS, LLC